508 P.2d 542

**Madeline LATIMER, Plaintiff and Appellant,**

v.

**Stanley KATZ, Defendant and Respondent.**

No. 13026.

Supreme Court of Utah.

March 29, 1973.

---

Fred G. Biesinger, Salt Lake City, for plaintiff-appellant.

Bryce E. Roe, of Roe & Fowler, Salt Lake City, for defendant-respondent.

CROCKETT, Justice:

Madeline Latimer sued Stanley Katz, real estate broker and former friend, seeking rescission of a contract by which he purchased her home, claiming fraud and deceit involving breach of his fiduciary duty. The trial court found the issues in favor of the defendant. Plaintiff appeals.

Plaintiff was purchasing her home at 1168 Gilmer Drive, Salt Lake City, in which she had substantial equity. Due to financial problems she had been trying to refinance without success. She asked the defendant, Stanley Katz, a social friend, to help her but his efforts were also unsuccessful. In their conversations it was suggested that perhaps he could buy the home under an arrangement whereby he would assign to her certain real estate contracts which he owned, and also yield her some cash.

Three appraisals of the home were obtained, one at $26,000, one at $27,500, and one at $29,000. On the basis of this information the parties arrived at a price of $27,500. However, for their own purposes, which included the desire to make as good a showing as possible for refinancing, they entered into an agreement in July, 1967, by

which Katz would purchaser the home, but stating the price to be $30,000. Of this Katz was to transfer to her contracts of face value of $10,000, and she would receive cash for the rest of her equity. The face value of the contracts assigned to her actually amounted to $10,555.84, and she received $1,819.57 in cash. He then leased the house to her and she continued to occupy it as her home. She was sometimes delinquent in her payments; and in June, 1971, Katz gave her notice that unless her payments were brought current by July 1, the lease would be terminated. Thereupon she caused this action to be commenced, seeking rescission, restoration of her former ownership, and damages.

The essential aspects of plaintiff's contentions are: That the defendant Katz was knowledgeable in real estate practices, and that she was not; that he was acting as a real estate agent for her, charging her the regular commission for handling the transaction, wherefore he had a special fiduciary duty to protect her interests, which he failed to discharge. She places reliance upon the doctrine set forth in Reese v. Harper [1] that:

> The agent . . . hold[s] himself out to the public as qualified . . . to render a specialized service . . . persons who entrust their business to such agents are entitled to repose some degree of confidence that they will be loyal to such trust and that they will, with reasonable diligence and in good faith, represent the interests of their clients . . . [wherefore] . . . it is incumbent upon [the agent] to apply his abilities and knowledge to the advantage of the man he serves; and to make full disclosure of all facts which his principal should know in transacting the business.

Defendant does not contend otherwise than that he acted as a real estate agent in the transaction and owed to plaintiff the duties just stated. His position is that he fully performed them.

In regard to the plaintiff's reliance upon the Reese case, it should be noted that there a jury had found facts favorable to the defendant, i. e., that the plaintiff real estate agent had not fulfilled the duties imposed upon him, which this court sustained as supported by the evidence. Whereas, in the instant case the trial court found the facts in favor of the defendant agent, that he had discharged his duties.

The specific matter upon which plaintiff focuses her attack upon the findings and judgment is this: that the defendant Katz, as her real estate agent, well knew that it was a custom in the real estate business that when real estate contracts are sold they are usually subjected to substantial

1. Reese v. Harper, 8 Utah 2d 119, 329 P.2d 410, citing 8 Am.Jur., Brokers, Sec. 86.

discounts of 25, 30, or even up to 50 per cent of their face value, but that he failed to advise her of that fact.

The plausibility in the plaintiff's contention arises from the fact that the trial court found in her favor as to the nondisclosure just recited. Finding No. 15 states:

Defendant did not disclose to plaintiff the fact that in buying and selling of real estate contracts, it is sometimes the practice to discount them. Defendant, however, did in effect discount the real estate contracts to the extent required by customary practices, and under the facts and circumstances defendant had no duty to disclose such practice because such disclosure was not material to the transaction.

It thus appears that the trial court adopted the view that, though defendant did not make such explanation to the plaintiff, the setting of the agreed price of $27,500 up to $30,000 in the formalized contract had the effect of giving plaintiff about 25 per cent discount on the face value of the contracts she received, and that this justified his finding No. 16:

The terms and conditions under which defendant purchased the plaintiff's lot and residence were fair and reasonable. and his conclusion of law that:

Defendant's conduct in connection with the purchase of plaintiff's home was not fraudulent and did not violate any duty arising out of the defendant's agency, fiduciary or confidential relationship with the plaintiff.

In regard to the total situation it is pertinent to observe that the trial judge may well have concluded that there was no basis for believing that the plaintiff was particularly naive or easy to be imposed upon. She was a mature and responsible individual; she had worked as a ticket agent for the United Airlines for over twenty years. Furthermore, he could have regarded it as a little strange that it was about three years after entering into the contract and performance thereunder, and after defendant had demanded her payments be brought current, that she then commenced this action, asserting the complaints upon which it is based.

According to the findings and conclusions of the trial court the presumptions of validity to which they are entitled,[2] and including therewith recognition that the burden is upon the appellant to show that they are in error, we have perceived no justification for reversal of the judgment.

Disposition of this case on the merits of the basic issue as above discussed makes it

2. As to rule of review in equity cases see Wiese v. Wiese, 24 Utah 2d 236, 469 P.2d 504.

unnecessary for us to be concerned with the issue of the Statute of Limitations,[3] upon which the trial court also ruled against the plaintiff.

Affirmed. Costs to defendant (respondent).

CALLISTER, C. J., and HENRIOD, ELLETT and TUCKETT, JJ., concur.

3. As to application of three-year limitation on action for fraud Sec. 78–12–26, U.C.A.1953, as compared to four years on actions for breach of duty Sec. 78–12–25, U.C.A.1953, see Kamas Securities Co. v. Taylor, 119 Utah 241, 226 P.2d 111.